UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

NOV 0 2 2001

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ———————
DEPUTY CLERK

JOSE C. DEHOYOS,
EVA PEREZ-DEHOYOS,
GEORGIA HARRISON,
CHARLES WHITE,
SHERYL H. FRANKS, and
MARTEL SHAW             :

        Plaintiffs,      :

     **vs.**            :

ALLSTATE CORPORATION,      :
ALLSTATE INSURANCE COMPANY,
ALLSTATE TEXAS LLOYD'S,
and ALLSTATE INDEMNITY
COMPANY              :     No.

        **Defendant.**

**SA01CA1010 FB**

---

## CLASS ACTION COMPLAINT

Plaintiffs bring this action both individually and on behalf of the class of persons defined below against Allstate Corporation, Allstate Insurance Company, Allstate Texas Lloyd's and Allstate Indemnity Company (hereinafter referred to collectively as "Allstate"), and pursuant to their investigation, upon knowledge as to themselves and their own acts and otherwise upon information and belief, for their Class Action Complaint allege as follows:

### NATURE OF THE CASE

1.     This is a class action seeking redress for a nationwide scheme of racial discrimination by Allstate relating to property and casualty insurance Policies. As used in this Complaint, the terms "Policy" or "Policies" refer to all property and casualty insurance policies issued by Allstate on a racially discriminatory basis.

000001

2.      This action is brought by Plaintiffs as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all non-Caucasian persons, hereinafter collectively referred to as the "Class" or "Class Members," who have (or had at the time of the Policies' termination) an ownership interest in one or more Policies issued, serviced or administered by Allstate based upon the common course of conduct described herein and who were thereby harmed.

3.      Plaintiffs seek injunctive, declaratory and equitable relief, and other remedies for Allstate's racially discriminatory, deceptive and unlawful conduct.

### JURISDICTION AND VENUE

4.      The Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(4), or 42 U.S.C. §3613(a) for plaintiffs' claims of violations of 15 U.S.C. §1681, §42 U.S.C. §1981, 42 U.S.C. §1982 and 42 U.S.C. §3604.

5.      Venue is proper in this district because Allstate maintains offices in this state, and several Allstate subsidiaries conduct business within the state and in this District. In addition, certain of the named plaintiffs reside in this District.

### THE PARTIES

6.      Plaintiffs Jose C. DeHoyos and Eva Perez-DeHoyos are each non-Caucasian and residents of Somerset, Texas. At all material times, Plaintiffs owned, and continue to own, homeowners insurance policies that were purchased from Allstate and issued by Allstate Texas Lloyd's, and automobile insurance policies that were purchased from Allstate and issued by Allstate Indemnity Company.

7.      Plaintiff Georgia Harrison is a non-Caucasian and is a resident of Plant City, Florida. Beginning in the late 1980's through 1998, Mrs. Harrison owned automobile insurance policies that

000002

were purchased from one or more of the Allstate subsidiaries in the state of Florida.

8.      Plaintiff Charles White is a non-Caucasian and is a resident of Miami, Florida. Beginning in 1998 through the present, Mr. White owned automobile insurance policies that were purchased from one or more of the Allstate subsidiaries doing business in the state of Florida.

9.      Plaintiff Sheryl Franks is a non-Caucasian and is a resident of San Antonio, Texas. At all material times, Ms. Franks owned an automobile insurance policy that was purchased from one or more of the Allstate subsidiaries doing business in the state of Texas.

10.     Plaintiff Martel Shaw is a non-Caucasian and is a resident of Plant City, Florida. At all material times, Mrs. Shaw owned automobile insurance policies that were purchased from one or more of the Allstate subsidiaries in the state of Florida.

11.     As more fully described below, each of these Plaintiffs was victimized by Allstate's discriminatory and deceptive scheme.

12.     Defendant Allstate Corporation is the parent company of Allstate Insurance Company, Allstate Indemnity Company, and Allstate Texas Lloyd's, and as such is liable for the conduct alleged herein.  Further, Allstate Corporation, Allstate Insurance Company, Allstate Texas Lloyd's and Allstate Indemnity Company along with other Allstate subsidiaries and affiliates have acted in concert in carrying out the discriminatory conduct alleged herein and will be referred to collectively in this complaint as "Allstate." Allstate Corporation and its subsidiaries are organized under the laws of the State of Illinois, and maintain their principal offices in Northbrook, Illinois.

000003

## ALLSTATE'S DISCRIMINATORY, DECEPTIVE AND
## OTHER WRONGFUL ACTS

13.     For a substantial number of years, Allstate knowingly and intentionally has engaged in racially discriminatory practices involving the underwriting, pricing, formation, administration and renewal of Policies in order to increase its own revenues and profitability to the detriment of Plaintiffs and Class Members.

14.     At all material times, Allstate acted with a discriminatory intent and was motivated by racial animus. Further, at all material times, Allstate acted in a manner that resulted in a disparate-impact on non-Caucasians. Allstate continues to discriminate against plaintiffs and Class Members as alleged below. Allstate's discriminatory conduct includes, *inter alia*, charging non-Caucasians, including Plaintiffs and Class Members, higher premiums for property and casualty insurance such as automobile coverage and homeowner's insurance.

15.     Over the years Allstate has employed various artifices to conceal its discriminatory conduct. Initially, Allstate established geographical districts to identify and target non-Caucasian neighborhoods for the purpose of charging the non-Caucasian residents of these districts higher premiums because of their race. In the early 1990's Allstate began moving away from this means of discrimination by making extensive use of credit reports to assess "financial stability" for use in underwriting decisions. This use of credit reports in underwriting decisions was also done for racially discriminatory purposes. Several years thereafter Allstate began using "financial stability" as a rating tool and as another means of racial discrimination. In recent years Allstate has intensified its use of credit scoring through development of the Insurance Financial Stability score and the Strategic Risk Management system. Allstate designed each of these artifices for the purpose of using them as a

4

pretext to discourage sales to non-Caucasians and to charge non-Caucasians higher premiums.

16.     To further its discrimination, conceal its wrongful conduct and reap profits through its racially discriminatory practices, Allstate prepared flawed research and statistical analyses to rationalize its discriminatory conduct. Despite these flawed assumptions, Allstate has vigorously defended its use of credit scoring (through the Insurance Financial Stability score and the Strategic Risk Management) system as actuarially sound and has, at the same time, refused to disclose any legitimate actuarial basis for its methods. Allstate has adamantly resisted every attempt to uncover the assumptions underlying its discriminatory methods. As such, Allstate has never disclosed to Plaintiffs or Class Members or anyone outside Allstate the computer modeling, research, algorithms or statistical comparisons it has utilized. The algorithms, research, computer credit scoring models and statistical comparisons are simply a pretext for Allstate's racially discriminatory practices.

17.     To further its discrimination, Allstate has systematically closed offices which serviced non-Caucasians and has actively discouraged its agents from selling to non-Caucasians through a variety of means. For example, Allstate conceals its credit scoring methods and underlying assumptions from its agents and thereby deliberately prevents and prohibits its agents from providing information to non-Caucasians which would reveal Allstate's discriminatory conduct.

18.     To further its discrimination, Allstate also engaged in the practice of using the identity of prior insurers as a grounds to place insureds in higher priced automobile insurance policies issued by Allstate Indemnity Company. Specifically, Allstate originally designated a group of insurance companies as "substandard" insurers, and stated in its underwriting rules that if Allstate applicants were previously insured by such "substandard" insurers, the applicant would have to pay the higher premiums charged by Allstate Indemnity Company, rather than the lower premiums charged in the

5

000005

preferred policies issued by Allstate Insurance Company. Although Allstate eventually changed the term "substandard insurer" to "standard insurer," it continued to relegate insureds with policies previously issued by any of the companies on this list to the more expensive policies issued by Allstate Indemnity Company.

19.     The insurance companies identified by Allstate as substandard are predominantly located in African-American and Hispanic communities.   Thus, Allstate has utilized these underwriting criteria to further its discrimination against African-Americans and other non-Caucasians.

20.     Allstate has achieved its discriminatory goal of charging non-Caucasians more for the sale of less desirable Policies through use of the artifices described above by systematically and routinely placing non-Caucasian insureds into Allstate Indemnity Company, a subsidiary designed to issue substandard, and more expensive property and casualty insurance.  Since implementation of the Strategic Risk Management system and Insurance Financial Stability score in more recent years, Allstate has used its racially discriminatory methods to place non-Caucasians into the substandard groups which are charged higher premiums for property and casualty insurance.

21.     Rather than establishing premium cost based upon the risk that claims will be made by the prospective insured, Allstate establishes its premiums based upon the economic profile and financial stability of the insured.  Allstate has identified the characteristics of individuals it considers to be "High Lifetime Value" customers and charges its best, most favorable premiums to these customers.  Customers not considered to be of "High Lifetime Value" to Allstate are charged higher premiums.  Allstate also uses its system of identifying "High Lifetime Value" customers as a pretext to discriminate against non-Caucasians.

6

000006

22.     Plaintiffs and Class Members have lost and face losing millions of dollars in premiums paid for Policies as a result of premium overcharges due to racial discrimination.

23.     Allstate has received millions of dollars of premium income by virtue of its discriminatory, fraudulent, deceptive and overreaching policy pricing and administration practices.

24.     The premiums established and charged to Plaintiffs and the Class by Allstate for Policies are racially discriminatory, excessive, unfair, unconscionable, unlawful and unreasonable and were designed to and have yielded a rate of return on these insurance products for Allstate which is excessive and unreasonable.

## ACCRUAL, FRAUDULENT CONCEALMENT, CONTINUING VIOLATION AND EQUITABLE TOLLING

25.     Plaintiffs and Class Members did not know and could not reasonably have known that they would pay or paid a higher premium or receive lower benefits than Caucasians on Allstate property and casualty insurance. Their claims did not accrue until shortly before the filing of this action.

26.     Allstate's discriminatory scheme was, by design and in practice, inherently self-concealing. Allstate knew that Plaintiffs and Class Members could not determine the relationship between the cost and benefit of the Policies it was selling relative to the types of policies and premiums available to non-Caucasians. Allstate knew that the premiums charged to non-Caucasians, unbeknownst to non-Caucasians, were substantially more expensive on an annual basis than Allstate's other products sold to Caucasians.

27.     The decisions to sell discriminatory Policies to non-Caucasians and to conceal Allstate's discriminatory practices were made more than a decade ago. However, Allstate

000007

intentionally continues to discriminate and knowingly conceals its racially discriminatory practices. Allstate has consistently refused to release or provide information about its discrimination against plaintiffs and Class Members, and has actively and fraudulently concealed its discriminatory practices by several methods to insure that its discriminatory practices are not discovered. Although the initial decisions by Allstate to discriminate and to conceal it were made years ago, Allstate has repeatedly elected to continue the concealment of its discriminatory practices and has acted in accordance with this decision throughout the limitations period.

28.     Allstate systematically implemented alternative artifices at critical times to avoid detection of its discrimination. Allstate has concealed its underlying assumptions and computer scoring models from its agents to prevent disclosure of its discriminatory methods to Plaintiffs and the Class. Allstate has also vigorously opposed regulatory efforts to discover its computer scoring methods, underlying assumptions and actuarial justification for its practices.

29.     At no time did Allstate train or encourage its agents to explain the different treatment between non-Caucasians and Caucasians to Plaintiffs or Class Members or to notify its non-Caucasian policyholders that they were paying higher premiums for inferior products than similarly situated Caucasians.

30.     Plaintiffs and Class Members were unable to determine from the face of their Policies that their Policies uniformly bore a higher premium rate because of their race. Allstate's premiums have been determined based on a number of undisclosed factors that varied between policyowners and which are not revealed to its policyholders or its agents. Thus, even if Class Members had attempted to inquire about their rates, they could not have discovered Allstate's unfair and illegal practices. In fact, Allstate encourages its agents to dissemble information when inquiries are made

000008

by policyholders.

31.     Allstate systematically and uniformly trained its sales force not to disclose the existence of discriminatory premium rates.  Allstate never disclosed its discriminatory practices in any of its Policies or sales and marketing materials provided to Plaintiffs or the Class.  Allstate never disclosed to Plaintiffs or Class Members that the rates it offered to Caucasians were lower than the rates offered to non-Caucasians.

32.     Allstate is in sole possession of its actuarial and rate information concerning these Policies, and Allstate considers this information highly confidential and does not and did not disclose this information to Plaintiffs or Class Members.

33.     As a result of the foregoing, Plaintiffs and Class Members in the exercise of due diligence could not have reasonably discovered the discriminatory premiums and other deceptive and discriminatory practices and did not do so until just recently.  For the reasons alleged above, the members of the Class still do not know that they have been and continue to be injured by Allstate's discriminatory conduct.

34.     Allstate's discriminatory conduct is continuing in nature, and Allstate has committed discriminatory acts throughout the limitations period.

35.     There is a substantial nexus between the acts of discrimination occurring within the limitation periods prior to filing suit and the acts of discrimination before that time.  The acts involve the same type of discrimination and are recurring, not isolated, events.

36.     Allstate has actively concealed its discriminatory and other wrongful conduct in order to prevent, and indeed has succeeded in preventing, Plaintiffs and Class Members from discovering its racially discriminatory pricing and fraudulent misconduct.  Allstate specifically misled Plaintiffs and

9

000039

Class Members into believing that the rates and insurance offered were fair, reasonable, and the same as offered to Caucasian policyholders, and took steps to conceal its fraudulent and unfair conduct.

37.    The statute of limitations applicable to any claims which Plaintiffs or other Class Members have brought or could bring as a result of the unlawful and fraudulent concealment and course of conduct described herein has been tolled as a result of Allstate's fraudulent concealment. In addition, Plaintiffs and the Class did not and could not have discovered their causes of action until the time alleged below, thereby tolling any applicable statute of limitations. Allstate, through various devices of concealment and secrecy described above, affirmatively and fraudulently concealed the existence of its unlawful and discriminatory scheme and course of conduct from Plaintiffs and Class Members. Plaintiffs and Class Members had no knowledge of Allstate's scheme and unlawful conduct and did not learn of or discover Allstate's fraudulent course of conduct until the filing of this action.

## PLAINTIFFS JOSE DEHOYOS AND EVA PEREZ-DEHOYOS

38.    Plaintiffs Jose DeHoyos and Eva Perez-DeHoyos are Mexican Americans and members of the class alleged herein. They have been insureds under Allstate homeowners and automobile insurance policies since 1984.

35.    Since 1984, Mr. and Mrs. DeHoyos have maintained good driving records. They have also had good credit histories. In July, 2001, they were informed by Allstate that their premiums for both their homeowners and automobile policies were being substantially increased. When they inquired as to the reason, they were informed that Allstate's new use of Insurance Financial Stability Scores caused this increase in their premiums.

39.    The DeHoyos' Policies were purchased on the understanding that the type of policies offered and the premiums charged were fair and reasonable. Allstate never disclosed or otherwise

000010

informed the DeHoyos that they were charged a higher premium rate on these policies, based on their race through Allstate's use of geographical redlining and/or credit scoring.

40.     Allstate engaged in discrimination both as a result of racial *animus* and in order to profit at the expense of the non-Caucasian community.

41.     As a result of Allstate's racially discriminatory practices alleged above, premiums were paid on their Allstate Policies that were higher than the premiums charged to similarly situated Caucasian policyowners.

42.     Because Allstate fraudulently concealed its discriminatory and other wrongful conduct, Plaintiffs could not have known: (I) that they were required to pay a higher premium rate because of their race, and (ii) that they were not offered better, more favorable and affordable insurance coverage because of their race.

### PLAINTIFF SHERYL FRANKS

43.     Plaintiff Sheryl Franks is an African-American and a member of the Class alleged herein. She has been insured under Allstate auto insurance policies since 1997. She and her daughter, who is also an insured under the policy, have maintained good driving records. In 1999, personal circumstances caused Ms. Franks to file for bankruptcy. She continued to renew her Allstate policy thereafter, and has paid all premiums when due.

44.     In June, 2001, Ms. Franks was informed by Allstate that her premiums were being substantially increased. When she inquired as to the reason, she was informed that, despite her good driving record, her "credit score" was responsible for increased premiums.

45.     Allstate engaged in discrimination both as a result of racial *animus* and in order to profit at the expense of the non-Caucasian community.

000011

46.     Ms. Franks has paid her premiums based upon a racially discriminatory premium rate and, as a result, paid more in premiums than similarly situated Caucasian individuals would pay.

47.     Because Allstate fraudulently concealed its discriminatory and other wrongful conduct, Ms. Franks could not have known: (I) that she was required to pay a higher premium rate because of her race, and (ii) that she was not offered better, more favorable and affordable insurance coverage because of her race.

### PLAINTIFF GEORGIA HARRISON

48.     Plaintiff Georgia Harrison is an African-American and a resident of Plant City, Florida and is a member of the Class alleged herein. Ms. Harrison was assigned to Allstate's indemnity program which results in her paying higher premiums for auto insurance. Ms. Harrison has a good driving record and was assigned to the indemnity program as a result of her race through Allstate's geographical redlining.

49.     Allstate never disclosed or otherwise informed Ms. Harrison that she was charged a higher premium rate based on her race.

50.     Ms. Harrison's Policy was purchased on the understanding that the type of Policy offered and the premiums charged were fair and reasonable. Allstate never disclosed or otherwise informed Ms. Harrison that she was charged a higher premium rate based on her race.

51.     Allstate engaged in discrimination both as a result of racial *animus* and in order to profit at the expense of the non-Caucasian community.

52.     As a result of Allstate's racially discriminatory practices alleged above, the premiums charged for Ms. Harrison's Allstate Policy were higher than the premiums charged to similarly situated Caucasian policyowners.

12

000012

53.     Because Allstate fraudulently concealed its discriminatory and other wrongful conduct, Ms. Harrison could not have known: (I) that she was required to pay a higher premium rate because of her race, or (ii) that she was not offered better, more favorable and affordable life insurance coverage because of her race.

## PLAINTIFF CHARLES WHITE

54.     Charles White is an African-American and a resident of Miami, Florida and is a member of the Class alleged herein.

55.     Mr. White has a good driving record and was assigned to the indemnity program as a result of his race through geographical redlining and/or credit scoring.

56.     Mr. White's Policy was purchased on the understanding that the type of Policy offered and the premiums charged were fair and reasonable. Allstate never disclosed or otherwise informed Mr. White that he was charged a higher premium rate based on his race.

57.     Allstate engaged in discrimination both as a result of racial *animus* and in order to profit at the expense of the non-Caucasian community.

58.     Mr. White paid his premiums based upon a racially discriminatory premium rate and, as a result, paid more in premiums than similarly situated Caucasian individuals would pay.

59.     Because Allstate fraudulently concealed its discriminatory and other wrongful conduct, Mr. White could not have known: (I) that he was required to pay a higher premium rate because of his race, or (ii) that he was not offered better, more favorable and affordable insurance coverage because of his race.

## PLAINTIFF MARTEL SHAW

60.     Plaintiff Martel Shaw is an African-American and a resident of Plant City, Florida,

000013

and is a member of the Class defined herein.

61.    Mrs. Shaw has a good driving record and has been assigned to the indemnity program as a result of geographical redlining and/or credit scoring.

62.    Mrs. Shaw's Policy was purchased on the understanding that the type of Policy offered and the premiums charged were fair and reasonable. Allstate never disclosed or otherwise informed Mrs. Shaw that she was charged a higher premium rate based on her race.

63.    Allstate engaged in discrimination both as a result of racial *animus* and in order to profit at the expense of the non-Caucasian community.

64.    As a result of Allstate's racially discriminatory practices alleged above, the premiums charged for Mrs. Shaw's Policy were higher than the premiums charged to similarly situated Caucasian policyowners.

65.    Because Allstate fraudulently concealed its discriminatory and other wrongful conduct, Mrs. Shaw could not have known: (I) that she was required to pay a higher premium rate because of her race, or (ii) that she was not offered better, more favorable and affordable insurance coverage because of her race.

## CLASS ACTION ALLEGATIONS

66.    This case is brought as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure because Allstate has acted or refused to act on grounds generally applicable to the Class. In addition, Plaintiffs seek certification of a Rule 23(b)(3) punitive damage class. Plaintiffs seek certification of this action as a class action on behalf of the Class defined above.

67.    This action is appropriate as a class action pursuant to Rule 23. Allstate has engaged in a common course of racially discriminatory conduct in the formation and servicing of the Policies

14

000014

sold to Plaintiffs and Class Members and in the calculation of the premiums charged on those Policies.

68.    Membership in the Class is so numerous that separate joinder of each member is impracticable.  The number of Class Members is unknown but can be readily determined from the records of Allstate.  Plaintiffs reasonably estimate that there are hundreds of thousands of persons in the Class.  Although Plaintiffs do not presently know the names of all Class Members, the Class is ascertainable and the identities and addresses can be obtained from Allstate's records.

69.    Plaintiffs are members of the Class of victims described herein.  They own Policies and were subjected to Allstate's fraudulent and discriminatory scheme and common course of conduct.

70.    There are numerous and substantial questions of law and fact common to all Class Members which control this litigation and which predominate over any individual issues.  Included within the common questions are:

a.    Whether Allstate discriminated against Class Members by charging them more in premiums for their insurance Policies than the premiums charged to similarly situated Caucasians;

b.    Whether Allstate discriminated against Class Members by the creation of geographical designations to identify non-Caucasian neighborhoods for the purpose of charging the residents of these areas higher premiums, and whether the Strategic Risk Management system and Insurance Financial Stability scoring programs were designed and implemented as a pretext for Allstate's racially discriminatory pricing of premiums;

c.    Whether Allstate's intent in its discriminatory policies and practices was racially motivated;

15

000015

d.   Whether Allstate maintained a corporate policy to sell its Policies on a racially discriminatory basis by concealing material information from Plaintiffs and Class Members such as the fact that the Policies were not sold under the same terms and conditions as those offered to similarly situated Caucasians;

e.   Whether Allstate trained, directed or determined that its agents conceal or not disclose Allstate's discriminatory practices in the sale and servicing of the Policies;

f.   Whether Allstate devised and deployed a scheme or common course of conduct which acted to defraud or deceive Plaintiffs and Class Members and/or exacted unreasonable, unconscionable and/or discriminatory premiums for its insurance Policies by taking advantage of its position of superior knowledge and otherwise;

g.   Whether Allstate systematically failed to disclose to Plaintiffs and Class Members material information such as the actual basis on which premiums would be calculated;

h.   Whether Allstate systematically discriminated against Class Members and engaged in a deceptive scheme and common course of conduct in targeting an economically disadvantaged segment of the population for the sale of Policies;

i.   Whether Plaintiffs and Class Members are entitled to specific performance, injunctive relief and/or other equitable relief against Allstate;

j.   Whether Plaintiffs and Class Members are entitled to an award of punitive

000016

damages against Allstate; and

k.  Whether Plaintiffs and Class Members have sustained damages and the proper measure of those damages.

71.  The claims of Plaintiffs are typical of the claims of the Class, and Plaintiffs have no interests which are adverse to those of the Class.

72.  Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced and competent in the prosecution of insurance class actions and similar types of complex litigation.

73.  Plaintiffs seek preliminary and permanent injunctive and equitable relief and punitive damages on behalf of the entire Class because Allstate has acted or refused to act on grounds generally applicable to the entire Class.

74.  Certification of a punitive damage Class pursuant to Rule 23(b)(3) meets the superiority and manageability tests required under the Rules of Civil Procedure.

75.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, Class Members will continue to suffer damage, and Allstate's violations of law will proceed without remedy while Allstate continues to retain the proceeds of its ill-gotten gains.

76.  Most individual Class Members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the size and scope of Allstate's uniform sales scheme, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, damages suffered by individual Class Members.

77.  This action will result in an orderly and expeditious administration of Class claims.

000017

Economies of time, effort and expense will be fostered and uniformity of decisions will be ensured.

78.     This action presents no difficulty that would impede its management by the Court as a class action, and a class action is superior to other available methods for the fair and efficient adjudication of their claims.

## COUNT I

### (Racial Discrimination – 42 U.S.C. §1981)

79.     Plaintiffs repeat, reallege, and incorporate the allegations contained in paragraphs 1 through 78 above as if fully set forth herein.

80.     Allstate intentionally discriminated against Plaintiffs and Class Members by charging them higher premiums than those charged to similarly situated Caucasian policyowners as set out above.

81.     By charging higher premiums to Class Members, Allstate unlawfully discriminated against Plaintiffs and Class Members in (I) formation of contracts, (ii) making, performance, modification, and termination of contracts, (iii) the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship, and/or (v) conduct that interferes with the right to establish and enforce contract obligations.

82.     Allstate's actions violate 42 U.S.C. §1981, as well as the rights of Plaintiffs and the Class under the Fifth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States.

83.     Allstate has damaged Plaintiffs and Class Members because Plaintiffs and the Class have suffered economic loss as a result of Allstate's illegal racial discrimination.

84.     At no time has Allstate undertaken corrective action to ameliorate its racially

000018

discriminatory practices now embedded in the Policies purchased by Plaintiffs and Class Members. Allstate continues to reap the profits of its discriminatory practices and continues to discriminate. Allstate's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous or otherwise aggravated beyond mere negligence. As a result, plaintiffs and Class members are entitled to punitive damages.

## COUNT II

### (Race Discrimination – 42 U.S.C. §1982)

85. Plaintiffs repeat, reallege, and incorporate the allegations contained in paragraphs 1 through 78 above as if fully set forth herein.

86. Property and casualty insurance is personal property within the meaning of 42 U.S.C. §1982.

87. Allstate has discriminated against Plaintiffs and the Class with respect to the Policies they inherited, purchased, or held. Plaintiffs and the Class have not had the same right as Caucasians to inherit, purchase, and hold the insurance sold by Allstate. Allstate has, as a result, violated 42 U.S.C. §1982.

88. Allstate's violation of 42 U.S.C. §1982 was intentional and malicious.

89. Plaintiffs and the Class have continued to hold insurance Policies within the time period allowed under Plaintiffs' claims.

90. As a proximate result of Allstate's violation of 42 U.S.C. §1982, Plaintiffs have been

000019

damaged. In addition, Allstate's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous or otherwise aggravated beyond mere negligence. As a result, plaintiffs and Class members are entitled to punitive damages.

## COUNT III

### (Race Discrimination - 42 U.S.C. §3604)

91.    Plaintiffs repeat, reallege, and incorporate the allegations contained in paragraphs 1 through 78 above as if fully set forth herein. This count is brought on behalf of plaintiffs Jose C. DeHoyos, Eva Perez-DeHoyos and Class members.

92.    Property  and homeowners insurance and access thereto is covered by the Fair Housing Act, 42 U.S.C. §§3601 *et seq.*

93.    Plaintiffs DeHoyos and Class Members are non-Caucasian persons who either maintained or attempted to purchase property or homeowners insurance coverage from Allstate and either have been forced to pay higher premiums than Caucasian persons for such coverage or were denied coverage entirely as a result of Allstate's practices.

94.    Allstate's use of the Strategic Risk Management system and Insurance Financial Stability scoring programs have a disparate-impact on non-Caucasian persons, including Plaintiffs DeHoyos and Class Members, who either maintained or attempted to purchase property or homeowners insurance coverage from Allstate.

95.    By the actions described above, Allstate has violated 42 U.S.C. §3604.  As a proximate result of Allstate's violation of this statute, Plaintiffs have been damaged.

96.    Allstate's conduct as alleged herein is a direct and proximate cause of injury damage to the DeHoyos plaintiffs and Class members. As result, plaintiffs and Class members are entitled

000020

to equitable and legal relief. In addition, Allstate's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous or otherwise aggravated beyond mere negligence. As a result, plaintiffs and Class members are entitled to punitive damages.

**WHEREFORE**, Plaintiffs demand judgment and orders against Allstate on behalf of themselves and Class Members as follows:

(1)     An order determining that the action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(2)     Awarding Plaintiffs and Class Members their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

(3)     Granting extraordinary equitable and/or injunctive relief as permitted by law or equity, including rescission, reformation, attaching, impounding or imposing a constructive trust upon, or otherwise restricting, the proceeds of Allstate's ill-gotten funds to ensure that Plaintiffs and Class Members have an effective remedy.

(4)     Awarding punitive damages to Plaintiffs and Class Members;

(5)     Granting declaratory and injunctive relief and all relief that flows from such injunctive and declaratory relief; and

(6)     Granting such other and further relief as the Court deems just and proper including, but not limited to, recessionary relief and reformation.

000021

## JURY DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand trial by jury.

Dated: _11/07/01_

_[signature]_
_____
KEITH, WEBER & MOSTY, PLLC
ROBERT Q. KEITH
Texas State Bar # 11192000
112 No. Nugent Street
Box 155
Johnson City, TX 78636
Telephone (830) 868-7147
Facsimile (830) 868-4662

_[signature]_
_____
JAMES, HOYER, NEWCOMER
& SMILJANICH, P.A.
W. CHRISTIAN HOYER
CHRISTA L. COLLINS
TERRY A. SMILJANICH
One Urban Centre, Suite 550
4830 West Kennedy Blvd.
Tampa, FL 33609
Telephone: (813)286-4100
Facsimile (813) 2886-4174

MILBERG WEISS BERSHAD
HYNES & LERACH LLP
JOHN J. STOIA, JR.
Texas Bar No. 19264200
ANDREW W. HUTTON
HELEN I. ZELDES
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 231-1058

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ANDREW S. FRIEDMAN
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone: (602) 274-1100

RON PARRY, ESQUIRE
Arnzen, Parry & Wentz, P.S.C.
128 East Second Street
P.O. Box 742
Covington, KY 41012-0472
Telephone: (606) 431-6100
Facsimile: (606) 431-2211

000022

JOE R. WHATLEY, ESQUIRE
Whatley Drake, LLC
1100 Financial Center
505 N. 20th Street
Birmingham, AL 35203
Telephone: (205) 328-9576
Facsimile: (205) 328-9669

HERMAN WATSON, JR., ESQUIRE
REBEKAH KEITH, ESQUIRE
Watson Jimmerson, P.C.
200 Clinton Avenue West, Suite 800
PO Box 46
Huntsville, AL 35804
Telephone: (256) 536-7423
Facsimile: (256) 536-2689

DOUGLAS BOWDOIN
Smith MacKinnon Greeley Bowdoin
 Edwards Brownlee & Marks, P.A.
Citrus Center, Suite 800
255 South Orange Avenue
Orlando, Florida 32801
Telephone: (407) 843-7300

27642

000023